MABEL SZUMSKI, PETITIONER-APPELLANT, v.
DALE BOAT YARDS, INC., RESPONDENT-RESPONDENT.

Argued December 5, 1966—Decided January 23, 1967.

402

*Mr. Herman M. Wilson* argued the cause for petitioner-appellant.

*Mr. Edward B. Meredith* argued the cause for respondent-respondent (*Messrs. Meredith & Meredith,* attorneys).

The opinion of the court was delivered by

PROCTOR, J. This is a workmen's compensation case. The Division of Workmen's Compensation determined that it had jurisdiction to hear the claim and awarded dependency benefits to petitioner for the death of her husband. The County Court on its *de novo* review reached the same conclusions. The Appellate Division reversed the award on two grounds: (1) the Division lacked jurisdiction of the subject matter, and (2) the causal connection between decedent's work and his death was not established by a preponderance of the evidence. *Szumski v. Dale Boat Yards, Inc.,* 90 *N. J. Super.* 86 (*App. Div.* 1966). We granted certification. 46 *N. J.* 426 (1966).

The decedent, Anthony Szumski, was employed by respondent Dale Boat Yards, Inc., a corporation engaged in the maintenance, repair, storage and sale of pleasure boats with a principal location at Bay Head, New Jersey. Decedent reported to work daily at the Bay Head yard. He worked as a general "all around man" doing mechanical repairs, painting, and occasional duties pertaining to the delivery of boats. Except for the summer season all of his work was performed on land. During the summer about ten per cent of his time was spent on the water in connection with the repair or delivery of pleasure craft, and the remaining 90 per cent was spent on land.

On July 26, 1958 decedent was assigned to aid in the delivery of a 26-foot pleasure boat. The boat was in the water at Atlantic Highlands, and decedent was to assist in the loading of the boat onto a trailer for trucking to Bay Head and transshipment from there to Chicago by train. The cradle on the trailer bed was too small for the boat. After telephoning respondent in Bay Head for instructions, decedent and Milton Dunham and Frank Bartilotti, two friends of the owner of the boat, had the boat put back in the water without its

canopy. They planned to run it around Sandy Hook to Bay Head, a distance of some 35 miles.

The three men began the trip shortly after noon. About one and one-half hours later, at a point off Long Branch, the engine stopped. Decedent, a mechanic, tried to get the engine to start. At first he was assisted by one of the other men trying the electric starter, and later he worked alone. To do this he removed the hatch which covered the engine and lay on his stomach with his head and hands in the hold working on the engine. He continued to work on the engine for an extended period of time, roughly 30 minutes to an hour. The engine would fire up and run for a few seconds but failed to catch.

The temperature that afternoon was approximately 85°, and in Dunham's words it was "a very humid day." Bartilotti called the day "hot and muggy." Decedent was sweating profusely and asked Dunham for a rag to wipe the perspiration from his face. Bartilotti also noticed the perspiration on decedent.

Decedent complained to Dunham that he was not feeling well and went to lie down on the deck next to Bartilotti. About 20 minutes later Bartilotti observed that decedent was gasping, turning colors, stretching out his hands, and had a heavy discharge of mucus.

About 5:00 P. M. the Coast Guard came to the aid of the disabled boat and towed it ashore at Long Branch. Dr. Jacob Goldberg, the city physician of Long Branch, was called. He examined Szumski and noticed a cherry-red color of the face and an odor of gasoline fumes from the mouth. He pronounced Szumski dead and recommended an autopsy which was not performed. As a result of a telephone conversation with Dr. Goldberg, the county physician listed the cause of death on the death certificate as "Acute Myocardial Infarction."

At the hearing respondent's medical expert, Dr. Lewis, gave his opinion that the most probable cause of death was myocardial infarction. Petitioner's expert, Dr. Goldberg, gave three alternative causes of death: carbon monoxide poisoning,

myocardial infarction, and sun stroke. Thus the medical evidence at the hearing was substantially in agreement as to the cause of death with the death certificate, itself *prima facie* evidence of official determinations contained therein. *N. J. S.* 2A:82–12.

Mrs. Szumski, decedent's widow, testified that her 48-year old husband, though still able to work, had lost much of his strength in the year or two preceding his death. He had stopped his previously enjoyed recreations of bowling and swimming because he was too fatigued by his work. He had complained to his wife of being tired.

There are two issues for decision on this appeal: (1) is the jurisdiction of the State of New Jersey to apply its compensation law to decedent precluded by the federal admiralty jurisdiction, and (2) was there sufficient credible evidence for the Division and County Court to determine that decedent's myocardial infarction was causally related to his work.

## I

 Decedent was a land-based workman with almost all of his job duties performed on land. His employer had substantial physical assets in the State of New Jersey, and the employment contract was not transitory. Respondent has not suggested to us any material prejudice to the national maritime interest which might be caused by the application of our State remedy. On the contrary the strong governmental interest here involved is that of the State of New Jersey in seeing that due compensation is awarded to dependents of a New Jersey worker who lost his life in an industrial accident.

 Respondent relies on *Parker v. Motor Boat Sales, Inc.,* 314 *U. S.* 244, 62 *S. Ct.* 221, 86 *L. Ed.* 184 (1941), for the proposition that where the injury occurs to a workman engaged in maritime activity on navigable waters, state jurisdiction is precluded. However, the result of that case was to grant a federal compensation remedy and not to deny state relief, and the case must be read along with the later decisions

of *Davis v. Department of Labor and Industries of Washington,* 317 *U. S.* 249, 63 *S. Ct.* 225, 87 *L. Ed.* 246 (1942), *Moores' Case,* 323 *Mass.* 162, 80 *N. E. 2d* 478 (*Sup. Jud. Ct.* 1948), aff'd *per curiam sub nomine Bethlehem Steel Co. v. Moores,* 335 *U. S.* 874, 69 *S. Ct.* 239, 93 *L. Ed.* 417 (1948), and *Baskin v. Ind. Acc. Comm.,* 338 *U. S.* 854, 70 *S. Ct.* 99, 94 *L. Ed.* 523 (1949). These cases held that a state could validly apply its compensation law to a land-based worker who is injured or killed while engaged in maritime work on navigable waters.

We believe that the presumption of the constitutionality of the state remedy enunciated in *Davis* applies here and makes decedent a "twilight zone" worker with the result that his dependents may apply for relief under our State compensation act regardless of the place of the injury or the availability of a federal remedy. *Hansen v. Perth Amboy Dry Dock Co.,* 48 *N. J.* 389 (1967), decided today.

Respondent argues that the case of *Calbeck v. Travelers Ins. Co.,* 370 *U. S.* 114, 82 *S. Ct.* 1196, 8 *L. Ed. 2d* 368 (1962), has eliminated the need for the "twilight zone" by supplying a federal remedy for injuries which occur on navigable waters. However, we read *Calbeck* as extending the federal jurisdiction without in any way limiting the right of a state to apply its compensation remedy in cases where the application of the state remedy is constitutional. We do not believe that the United States Supreme Court intended in *Calbeck* to narrow or otherwise restrict the remedies available to injured workmen or their dependents. See fuller discussion of this interpretation of *Calbeck* in *Hansen v. Perth Amboy Dry Dock Co., supra,* 48 *N. J.,* at *p.* 389.

We therefore hold that the Division of Workmen's Compensation had jurisdiction to hear petitioner's claim.

## II

Death from heart attack has presented compensation courts with one of their most difficult problems. The situa-

tion has not been helped by the hoped-for development of definitive medical criteria. *Aladits v. Simmons Co.*, 47 *N. J.* 115, 123–124 (1966). In the meantime courts must do the best they can. The rule now applied in New Jersey in heart-attack compensation cases has been expressed as follows:

"Compensability arises whenever the required exertion is too great for the man undertaking the work, whatever the degree of exertion or condition of his heart." *Dwyer v. Ford Motor Co.*, 36 *N. J.* 487, 491–492 (1962).

See generally 1A *Larson, Workmen's Compensation* § 38.64 (b), 622–622.6 (1966).

Dr. Lewis, respondent's expert witness, concluded on the facts of the case that there was no causal connection between the work decedent was doing on July 26, 1958 and the fatal heart attack. However, he also testified in explanation of his opinion: "This [myocardial infarction] occurs within very broad limits without relationship whatsoever to the events of external environment." Although this reasoning may be acceptable to other medical authorities, it has been rejected by our courts. This Court has said of similar opinions by a medical expert:

"The opinion of appellant's doctor that the events of November 15 did not cause the attack was based upon his stated belief that extreme or severe tension cannot cause or precipitate such an attack. He thus placed himself in that school of thought whose medical views have been rejected by our courts." *McClain v. Bd. of Education of Woodbury*, 30 *N. J.* 567, 573 (1959).

See also *Aromando v. Rubin Bros. Drug Sales Co.*, 47 *N. J. Super.* 286, 287–292 (*App. Div.* 1957), certif. denied 26 *N. J.* 244 (1958).

██ This limitation of the views of Dr. Lewis does not decide the issue. Petitioner must establish her claim by a preponderance of the evidence. To do this there must be sufficient facts adduced at the hearing, and an expert medical opinion based thereon must be given to explain the facts and

show how the incidents of work contributed in some material degree to the myocardial infarction which caused the death. *Aladits, supra,* 47 *N. J.,* at *p.* 125.

The following factors tend to show a work effort by decedent which might cause acute myocardial infarction: (1) decedent's fatigue for the year or two before his death which could indicate a developing condition of arteriosclerosis and its effect on his heart; (2) assisting in the unsuccessful loading of the boat on the truck cradle and the boat's return to the water; (3) continuing emotional frustration at being stranded at sea unable to start the engine; (4) gasoline fumes inhaled together with possible inhalation of carbon monoxide and its detrimental effect; (5) decedent's position on his stomach with his head in the hot engine well which compressed his lungs and retarded his breathing capacity; (6) the heat and humidity of the day which made work on the boat not protected by a canopy very difficult; (7) the physical strain shown by the considerable flow of perspiration; and (8) the unusual and demanding nature of the work decedent was performing on that day.

Dr. Goldberg, petitioner's medical expert, first mentioned the cherry-red color of decedent's face which he observed on the day of death, and the gasoline fumes then coming from decedent's mouth. Dr. Goldberg's first opinion was that the death could have been caused by carbon monoxide poisoning. With this possibility eliminated in a hypothetical question based on the facts in evidence, Dr. Goldberg gave his opinion that death was due to a myocardial infarction caused in material degree by decedent's work on the day of death. With both carbon monoxide poisoning and myocardial infarction hypothetically eliminated as possible causes of death, Dr. Goldberg said that under the circumstances given to him the death might have resulted from sun stroke.

The testimony and opinions of Dr. Goldberg, a general practitioner, were somewhat less detailed and explanatory than is desirable. However, while again advising as to the advantages of explicit discussion of cause and effect in heart-

death cases (see *Aladits, supra,* 47 *N. J.,* at *pp.* 125–126), we will not let inarticulateness defeat a deserved compensation remedy.

■■ The over-all effect of the evidence at trial showed an unusual and arduous work effort by decedent on the day of his death. Although an unusual physical effort is no longer an essential to recovery in heart-attack compensation proceedings, *Ciuba v. Irvington Varnish & Insulator Co.,* 27 *N. J.* 127 (1958), nevertheless its presence is a persuasive indication that the attack was causally connected to the work. *Burkley v. Atlantic City,* 68 *N. J. Super.* 160, 174–175 (*App. Div.* 1961), certif. denied 36 *N. J.* 130 (1961). Indeed, unusual motional stress (as here caused by the aggravation of being stranded) has been relied on as an important indication of work connection. *McClain v. Bd. of Education of Woodbury, supra,* 30 *N. J.,* at *pp.* 573–574.

■ Thus there was sufficient credible evidence including expert medical opinion to support the determination of the Division and the County Court in its *de novo* review that: (1) the death was caused by acute myocardial infarction; (2) inhalation of gas fumes and subjection to the heat of the sun, though not causes of death, were aggravating factors which contributed to the heart attack; and (3) the myocardial infarction was caused in material degree by decedent's work effort. *Dwyer* and *Aladits,* both *supra.*

■■ Appellate courts should give deference to such findings particularly where the fact-finder has had the opportunity to see and hear the witnesses and judge their credibility and also insofar as the determination rests on agency expertness. They are not required to make new findings of fact in compensation cases; they should not reverse fact-findings based on sufficient credible evidence. *Close v. Kordulak Bros.,* 44 *N. J.* 589, 598–599 (1965).

■ If the Appellate Division in the present case concluded that there was insufficient credible evidence as a matter of law to support the findings of the Division and the County Court, we believe its decision was error. And insofar

as the Appellate Division intended to make new findings of fact, we think that it exceeded the proper scope of review set forth in *Close v. Kordulak Bros., supra.*

We hold that the determination of the Division and the County Court on the causal connection between the work effort and the death should not have been disturbed.

The judgment of the Appellate Division is therefore reversed and the judgment of the County Court is reinstated.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN — 7.

*For affirmance* — None.