193 N.J. Super. 688 (1984)
475 A.2d 671
GEORGIA A. GUNTER, PETITIONER-APPELLANT,
v.
FISCHER SCIENTIFIC AMERICAN, RESPONDENT-APPELLEE.
Superior Court of New Jersey, Appellate Division.
Argued April 17, 1984.
Decided April 25, 1984.
*689 Before Judges BOTTER and O'BRIEN.
*690 James A. Mella argued the cause for appellant (Jac B. Weiseman, attorney; Jac B. Weiseman, on the brief).
Jeffrey W. Moryan argued the cause for respondent (Connell, Foley & Geiser, attorneys; George J. Kenny, of counsel; Kathleen S. Murphy, on the brief).
The opinion of the court was delivered by BOTTER, P.J.A.D.
Petitioner appeals from a judgment denying her compensation for disability resulting from a back injury suffered at work. We reverse and remand because of the erroneous exclusion of certain documentary evidence and to require more specific findings upon consideration of all the evidence.
Petitioner filed two claim petitions asserting that she injured her back at work while moving a box of gallon containers on May 2, 1980 and while lifting a metal chair on September 26, 1980. Petitioner's expert, Dr. Shaw, testified that strains of her lower back resulted in partial permanent disability estimated at 15% of total. These findings were said to include disability from a sciatic nerve involvement to the extent of 2 1/2% of total disability which overlapped with the 12 1/2% of total permanent neuropsychiatric disability estimated by petitioner's expert, Dr. Pollack.
Petitioner's employer produced medical expert testimony which refuted these claims, although an orthopedist who testified for the employer stated that he estimated petitioner's permanent orthopedic disability at 2% of total resulting from a lumbosacral strain. This degree of disability was attributed to the two accidents in 1980 for which claim petitions were filed, as well as a back injury occurring in June 1979 for which petitioner did not file a compensation claim.
Based on all of the evidence before him, the judge of compensation rejected entirely the claim for neurological and psychiatric disability. He also rejected the claim for orthopedic disability, stating that "from the testimony of Dr. Shaw, there was *691 very little evidence of any objective findings." This statement referred to the standard in N.J.S.A. 34:15-36 which defines permanent disability to mean "a permanent impairment ... based upon demonstrable objective medical evidence, which restricts the function of the body or of its members or organs ... [considering as a factor any] lessening to a material degree of an employee's working ability." The statute further provides that minor contusions and strains shall not constitute permanent disability within the meaning of this statute. See Perez v. Pantasote, Inc., 95 N.J. 105, 116-118 (1984).
On this appeal petitioner contends that the proceedings below were tainted by bias on the part of the judge of compensation. Although we disagree with the rulings of the compensation judge in rejecting certain documentary evidence, namely, office records and reports of the treating physician, Dr. Glass, we reject the contention that petitioner was prejudiced by bias of the judge of compensation. We conclude, also, that his rejection of the claim for psychiatric disability was supported by substantial credible evidence. See DeAngelo v. Alsan Masons, Inc., 122 N.J. Super. 88 (App.Div.), aff'd on opinion below, 62 N.J. 581 (1973).
With respect to the type of evidence that may be admitted at a hearing on a compensation claim petition, N.J.S.A. 34:15-56 provides that, "exclusive of ex parte affidavits ... the official conducting the hearing shall not be bound by the rules of evidence." The purpose of this section was to simplify the nature of proof that can be offered without regard to technical exclusionary rules of evidence. Thus, hearsay evidence need not be excluded, although the ultimate award must be based on legally competent evidence. Gilligan v. International Paper Co., 24 N.J. 230, 236 (1957). We find the rulings of the judge of compensation in this case overly strict and, in some cases, erroneous.
At first the trial judge refused to admit into evidence the records of the Somerset Medical Center which were certified *692 by the custodian of those records as full and complete records made in the regular course of business at the time the services were rendered. This ruling was incorrect. Even under the rules of evidence, proof to establish the conditions (foundation) for the admissibility of business records may be presented by affidavit or certification, since, under Evid.R. 8(1), the rules of evidence do not apply to proofs submitted of a condition for the admissibility of other evidence. See State v. Cardone, 146 N.J. Super. 23 (App.Div. 1976), certif. den. 75 N.J. 3 (1977); Comment on Rule 63(13), Report of the New Jersey Supreme Court Committee on Evidence (1963), at 186-187; R. 1:4-4(b) (certification in lieu of affidavit). The Report notes that Evid.R. 63(13) does not require, as did N.J.S.A. 2A:82-35, that the "custodian or other qualified witness" must testify as to the identity and mode of preparation of the business record. It notes further that Evid.R. 8(1), providing that exclusionary rules of evidence do not apply to preliminary inquiries on admissibility, applies to this foundation evidence. Report at 186. The Report specifically states that an affidavit can be used to establish the foundation for introducing business records, although in some circumstances the testimony of a record custodian may be needed. Id. at 187. N.J.S.A. 2A:82-34 through 37 were superseded by Evid.R. 63(13) by reason of the footnote to the rule. N.J.S.A. 2A:84A-40.
After this ruling was made, the director of medical records of the Somerset Medical Center was called as a witness to prove a foundation for the admission of the hospital records. Objection to the admission of these records was again sustained apparently on the ground that the witness could not testify that the records brought to court represented the full and complete records of the hospital because they were actually complied by another employee who searched the record room for them and then certified that they were the correct copies of the record on file.
Ultimately, the custodian of records at the hospital was produced who testified that she searched for the complete *693 records and had them with her. They consisted of an emergency room report, a lab slip, and an X-ray report. It is unfortunate that so much time and energy was spent at the hearing arguing about the admissibility of these records. Having examined them we cannot say that they significantly added to the evidence in the case.
The compensation judge excluded from evidence reports of petitioner's treating physician, Dr. Glass, which were submitted to respondent's carrier. Also excluded were the doctor's office records, despite the fact that the doctor's office manager was called as a witness and testified that the records were maintained in the ordinary course of the doctor's business. Although the witness testified that the custom and habit of the doctor was to record his physical findings at the time of the examination, the compensation judge sustained an objection to this testimony on the ground that "the doctor would be in a better position to answer what his usual practice is." The test is not whether one witness would be a better witness than another. The question which should have been considered is whether the witness had personal knowledge of the matter about which she was asked to testify. Later, Dr. Glass's office manager did testify without objection that the doctor makes notations on a chart when he performs medical examinations and that he sends reports to insurance carriers based upon such information. Ultimately, after stating that he had not looked at the doctor's records or his diagnosis, the judge of compensation upheld the objection to the admission of the doctor's records. Paradoxically, the reason given was that the doctor was available to testify and petitioner "may suffer an injustice without the testimony of the doctor." The judge correctly observed that it was within his discretion to determine what weight should be given to the records and reports that were offered, absent testimony of Dr. Glass. However, admissibility is one thing and weight is another. In the circumstances, the trial judge should have admitted the documentary evidence. If respondent wanted to call Dr. Glass to explain any statements *694 in the records, respondent would have had an opportunity to do so. In our view, sufficient evidence was offered to support the introduction of the doctor's office records as business records under Evid.R. 63(13). The judge of compensation correctly noted that in his discretion expert opinion contained in business records may be excluded if it relates to diagnoses of complex medical conditions difficult to determine or substantiate. Cf. State v. Martorelli, 136 N.J. Super. 449, 453-454 (App.Div. 1975), certif. den. 69 N.J. 445 (1976). However, routine observations, findings and complaints clearly are admissible.
Petitioner relied on Evid.R. 63(8) and Evid.R. 63(9) for admission of Dr. Glass's reports to respondent's carrier. While there was testimony that Dr. Glass was the "company's doctor," this characterization was not sufficient to admit the reports as authorized or vicarious admission under these rules. It was not shown that Dr. Glass was an agent, employee or representative of respondent or that respondent authorized him to make the statements contained in the reports or that the statements were adopted by respondent within the meaning of Evid.R. 63(9)(a) or Evid.R. 63(8)(a) and (b). Nevertheless, considering that hearsay evidence can be admitted, and that Dr. Glass could have been called by respondent, we conclude that the rulings below unduly restricted petitioner's proofs.
On the record before us we cannot say to what extent petitioner may have been prejudiced by the exclusion of these records. However, the case should be remanded to the judge of compensation for further consideration for several reasons. Dr. Shaw testified to a number of objective findings of orthopedic and neurological injury. He testified to a flattening of petitioner's lumbar curve (respondent's doctor attributed this to her obesity). He testified to positive findings bilaterally on straight leg raising tests which, he said, indicated an injury involving the sciatic nerve. He testified to limitation in motion in the low back area. He testified to other tests which revealed pertinent objective findings. As noted above, the judge of *695 compensation stated that "there is very little evidence of any objective findings." This statement was not explained, and the judge said nothing to indicate why he preferred the testimony of the other medical experts over Dr. Shaw's testimony, if he did. With regard to the 1979 accident, it is not clear from the evidence that this accident permanently affected petitioner's condition, but it was a factor in the decision denying compensation. If the subsequent accidents aggravated a condition caused by the 1979 accident or if petitioner suffered no permanent disability as a result of the 1979 accident, that accident should not have precluded petitioner from recovering for the effects of the 1980 accidents, providing she satisfied her burden of proving disability, within the statutory standard, resulting from the 1980 accidents. Petitioner made no claim for the 1979 accident and returned to work after an absence of a few weeks. By comparison petitioner was out of work from May 2, 1980 until the end of July as a result of her second accident.
We express no opinion on petitioner's right to compensation in this case. The judge of compensation must make that decision. Accordingly, the case will be remanded to the Division of Workers' Compensation so that the judge of compensation can consider the contents of the medical records and the reports of Dr. Glass offered by petitioner and can make appropriate findings of fact. See Perez v. Pantasote, Inc., 95 N.J. at 118. If respondent wishes to introduce evidence in response to the evidence submitted by way of the medical records and reports, respondent should be given an opportunity to do so. The 1979 accident complicated the issue of assessing the effects of the later two accidents. Petitioner apparently contends that she filed no claim pertaining to that accident because it did not result in permanent injury. Depending upon his evaluation of the evidence, the compensation judge may permit the introduction of additional proofs concerning the effects of the 1979 accident if it will help resolve this case. The judge of compensation shall thereafter reconsider all of the evidence and make *696 specific findings of fact and conclusions of law concerning petitioner's right to compensation.
Reversed and remanded to the Division of Compensation. We do not retain jurisdiction.