685 A.2d 1301

TOBY EASTON REINHART, PETITIONER–RESPONDENT, v. E.I.
DUPONT DE NEMOURS, RESPONDENT–APPELLANT.

Argued October 22, 1996—Decided December 16, 1996.

*Sheldon Schiffman* argued the cause for appellant (*Michals, Wahl, Silver & Leitner,* attorneys).

*Fred Hopke* argued the cause for respondent (*Wilentz, Goldman & Spitzer,* attorneys).

The opinion of the Court was delivered by

COLEMAN, J.

The narrow issue raised in this workers' compensation case is whether an improper use of a transcript of a prior workers' compensation proceeding was so prejudicial that a redetermination of the merits of the claims should be required. The Appellate Division concluded that a reversal and remand are required. We granted certification, 144 *N.J.* 585, 677 *A.*2d 758 (1996). We now reverse and hold that the error was harmless.

## I

■ In June 1990, petitioner Toby Easton Reinhart filed a workers' compensation petition alleging that a work-related accident occurred on December 8, 1989, and that a reinjury occurred on December 12, 1989. E.I. Dupont De Nemours (Dupont), the employer, disputed both the occurrence and notice of the accident. Therefore, petitioner bore the burden of proof on those issues. A description of her work at Dupont is essential to understanding the mechanics of the alleged accident.

### –A–

Reinhart worked at Dupont as a machinist for nine years before the alleged accident. Her position as a machine operator involved assemblyline-style packaging of different types of film. There were two distinct job assignments, stacker and boxer, and the machine operators rotated assignments daily. While working the stacker, Reinhart was responsible for removing and bagging sheets of film. The film came out in twenty-nine by forty inch sheets from a machine approximately shoulder height. Once the machine emitted fifty sheets, Reinhart removed the bundle of sheets, placed it on a table, and bagged it before sending it to the next operator. In order to perform the job, Reinhart had to lift the bundles above shoulder height, turn and place the bundles on the table approximately five feet from the stacker, and then lift the bundle approximately one inch off the table in order to slide it manually into the bag.

When working the boxer rotation, Reinhart was responsible for receiving the bagged bundles of film, placing them in boxes, and labeling and taping the boxes. In that capacity, she took empty boxes of widths ranging from ten to fifty inches, placed them on a table, labeled them in sequence, and placed the bundle of bagged film inside. The labeling and boxing were performed at waist level, although the empty boxes were sometimes located overhead. Reinhart testified that the empty boxes were not heavy, the largest weighing no more than five pounds.

Reinhart testified that on Friday, December 8, 1989, she sustained an injury to her neck and shoulder while operating the stacker on the 7:00 a.m. to 3:00 p.m. shift. She claims that at approximately 1:30 p.m., she removed a forty to fifty pound stack of film, turned to place the film on the table, and felt a twinge in her neck and left shoulder that radiated into her left leg and foot. Reinhart described the feeling as a "spring action" that was not actually painful, but felt like a clicking in her neck and shoulder area. She testified that she had only a few bundles left to complete before she had to shut down the machine at 2:00 p.m. and clean up. She therefore completed her work and went home. She did not report the alleged accident to anyone at work, but mentioned the injury to her husband. She did not feel any pain at that time and thought the "clicking" feeling would go away. Reinhart claims that on Saturday morning, December 9, she awoke with a stiff neck and had difficulty moving her upper body. She spent that day in bed and did not return to work until the 3:00 p.m. to 11:00 p.m. shift on Tuesday, December 12, 1989, when her stiff neck had somewhat subsided. She did not seek medical attention or report the alleged accident at that time.

When Reinhart returned to work on Tuesday, December 12, she was assigned to boxing. Approximately four hours into her shift, she claims she picked up a stack of seven or eight empty boxes and felt the same twinge running from her back through her left leg. She said that she lost feeling in her leg and foot and could not walk for several minutes. She stated that when the feeling returned, she went to the office and sat for a few minutes until the pain diminished. Reinhart testified that because no foreman was working the 3:00 p.m. to 11:00 p.m. shift, she sent a letter through the computer system to the day-shift foreman. She claims that in the letter she explained what had happened and stated that she planned to see a doctor the following morning. She believed the foreman would receive the letter the next day. After writing the letter, Reinhart returned to work and finished her shift with the assistance of co-workers. She testified that she mentioned her injury to the chief operator on duty, who is now

deceased. The computerized letter was never received by a foreman or supervisor.

Reinhart admitted on cross-examination that she was aware of the procedure for reporting accidents and injuries, that she had received training in utilizing Dupont's notification procedure, and that she had used the procedure on several occasions in the past. She admitted that she did not follow the standard reporting procedure for the alleged December 1989 episodes.

The morning after the alleged reinjury, Reinhart saw Dr. Luciano, her primary care physician at the Rutgers Community Health Plan, and received a light duty slip. Reinhart testified that when she returned to work that afternoon she presented Dr. Luciano's slip to the plant hospital. It was her impression that the hospital forwarded the slip to her supervisor who assigned her to light office work. She eventually had surgery on her upper back in November 1990. She was out of work until February 1991.

–B–

In denying that petitioner sustained a compensable accident in December 1989, Dupont relies heavily on the facts and circumstances surrounding petitioner's 1986 workers' compensation hearing that involved a 1984 accident. That information was presented in this case through cross-examination and the admission of a transcript of the 1986 proceeding.

In the present litigation, counsel for Dupont cross-examined petitioner in an effort to show that the complaints she gave in the present case were almost identical to those she had given in the 1986 hearing. During cross-examination petitioner testified that the injuries she had sustained in the 1984 accident had cleared up prior to the December 8, 1989 alleged accident and then had reappeared after the 1989 episodes.

To enable the judge to compare her complaints at the 1986 hearing with the complaints at the trial regarding the 1989

episodes, Dupont's counsel offered into evidence the transcript of the 1986 hearing. The judge concluded that the transcript was admissible to attack petitioner's credibility.

When the judge rendered his decision, he pointed out several inconsistencies in petitioner's testimony. He concluded that petitioner had the tendency to be untruthful:

> . The [c]ourt concludes that Petitioner has a proclivity to be untruthful which has a direct bearing on her credibility. These "fibs" caused people to rely upon and take certain actions based on her statements. To her, they may have had no dire consequences; to the [c]ourt, it reveals a complete lack of understanding and propensity to be untruthful.

Thus, the judge concluded that Reinhart had not reported her injury and had not established a compensable injury:

> I'm satisfied that the petitioner was well aware of the reporting requirements of the respondent, that she did not report the alleged accidents, and as a result, the respondent was severely prejudiced.... Beyond that, it is this [c]ourt's opinion that the petitioner has failed to sustain the burden of proving an accident arising out of and in the course of the employment with the respondent.

Based on those findings, Reinhart's claims were dismissed.

The Appellate Division reversed in an unpublished opinion. Although the court recognized that the Rules of Evidence do not apply to workers' compensation proceedings, it asserted that a judge relying on those rules must apply them consistently with their general application. The court noted that the Rules of Evidence limit the admission of extrinsic evidence to prove character or a trait of character by allowing only evidence of reputation, evidence of opinion, or evidence of conviction of a crime. *N.J.R.E.* 405. The court also noted that evidence of a person's character or a trait of the person's character is not admissible for the purpose of proving the person acted in conformity therewith on a particular occasion except under circumstances that are not pertinent to this case. *N.J.R.E.* 404(b).

The court concluded that the admission of the 1986 transcript was error, noting that the judge specifically relied on the instances of untruthfulness contained therein. The court held that the admission of the transcript directly violated the Rules of Evidence.

It reversed the decision below and remanded for redetermination by a new judge.

## II

Dupont argues that the Appellate Division erred in holding that the 1986 transcript was inadmissible. It also argues that the court below violated its scope of review in overturning the judge of compensation's finding that petitioner failed to establish liability by a preponderance of the evidence.

■ It is clear that the Rules of Evidence do not apply to workers' compensation proceedings. *N.J.S.A.* 34:15–56 provides that when deciding a contested case, a judge of compensation "shall not be bound by the rules of evidence." Case law has consistently reiterated that proposition. *Andricsak v. National Fireproofing Corp.,* 3 *N.J.* 466, 471, 70 *A.*2d 750 (1950); *Helminsky v. Ford Motor Co.,* 111 *N.J.L.* 369, 373, 168 *A.* 420 (E. & A.1933); *Friese v. Nagle Packing Co.,* 110 *N.J.L.* 588, 588, 166 *A.* 307 (E. & A.1933); *Paco v. American Leather Mfg. Co.,* 213 *N.J.Super.* 90, 93, 516 *A.*2d 623 (App.Div.1986); *Gunter v. Fischer Scientific Am.,* 193 *N.J.Super.* 688, 691, 475 *A.*2d 671 (App.Div. 1984).

■ Although the Rules of Evidence do not control the admission of evidence in workers' compensation proceedings, it is well-settled that a judge of compensation's determination must be based on competent evidence. *Gilligan v. International Paper Co.,* 24 *N.J.* 230, 236, 131 *A.*2d 503 (1957); *Andricsak, supra,* 3 *N.J.* at 471, 70 *A.*2d 750; *Helminsky, supra,* 111 *N.J.L.* at 373, 168 *A.* 420; *Friese, supra,* 110 *N.J.L.* at 588, 166 *A.* 307; *Gunter, supra,* 193 *N.J.Super.* at 691, 475 *A.*2d 671; *Fagan v. Newark,* 78 *N.J.Super.* 294, 307–08, 188 *A.*2d 427 (App.Div.1963). The purpose of not requiring strict compliance with the Rules of Evidence is to simplify the nature of proofs that can be offered in workers' compensation proceedings. *Gunter, supra,* 193 *N.J.Super.* at 691, 475 *A.*2d 671. Viewed in that context, the real issue presented is

not whether evidence was admitted in violation of the Rules of Evidence, but whether there is substantial credible evidence in the record to support the judgment when the proofs are considered as a whole. *Szumski v. Dale Boat Yards, Inc.,* 48 *N.J.* 401, 410, 226 *A.*2d 11, *cert. denied,* 387 *U.S.* 944, 87 *S.Ct.* 2077, 18 *L.Ed.*2d 1331 (1967); *Close v. Kordulak Bros.,* 44 *N.J.* 589, 599, 210 *A.*2d 753 (1965); *Goyden v. State Judiciary, Superior Court of New Jersey,* 256 *N.J.Super.* 438, 446, 607 *A.*2d 651 (App.Div.1991), *aff'd o.b.,* 128 *N.J.* 54, 607 *A.*2d 622 (1992); *Manzo v. Amalgamated Indus. Union Local 76B,* 241 *N.J.Super.* 604, 609, 575 *A.*2d 903 (App. Div.), *certif. denied,* 122 *N.J.* 372, 585 *A.*2d 379 (1990). Due regard must be given to the opportunity of the one who heard the witnesses to judge their credibility. *Szumski, supra,* 48 *N.J.* at 410, 226 *A.*2d 11; *Close, supra,* 44 *N.J.* at 599, 210 *A.*2d 753; *Goyden, supra,* 256 *N.J.Super.* at 446, 607 *A.*2d 651.

■ Despite the inapplicability of the Rules of Evidence, they are still relevant in determining whether evidence is competent. The Rules of Evidence provide that all relevant evidence should be admitted unless otherwise excludable. *N.J.R.E.* 402. Relevant evidence is broadly defined to mean "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." *N.J.R.E.* 401; *see also State v. Cavallo,* 88 *N.J.* 508, 515, 443 *A.*2d 1020 (1982) (noting that evidence is relevant when it " 'renders the desired inference more probable than it would be without the evidence' " (quoting *State v. Deatore,* 70 *N.J.* 100, 116, 358 *A.*2d 163 (1976))); *Deatore, supra,* 70 *N.J.* at 116, 358 *A.*2d 163 (noting that the "test is broad and favors admissibility").

■ Rule 402, allowing the admission of relevant evidence, is the "keystone of the *Rules of Evidence." State v. Dixon,* 125 *N.J.* 223, 248, 593 *A.*2d 266 (1991). Unless the opponent of the proffered evidence can point to a specific rule of exclusion, or the judge exercises discretion to exclude the evidence based on countervailing concerns pursuant to *N.J.R.E.* 403, relevant evidence is admissible. Biunno, *Current New Jersey Rules of Evidence,*

comment 1 on *N.J.R.E.* 402 (1996); *see also Reilley v. Keswani,* 137 *N.J.Super.* 553, 555, 350 *A.*2d 74 (App.Div.1975) (asserting that "all evidence relevant to the issues in controversy [should] be admitted, unless its admission would transgress some paramount policy of society and the law").

■ The transcript was introduced into evidence in the present case to attack the petitioner's credibility. *Rule* 607 permits the use of the transcript for that purpose. We hold that the transcript was introduced into evidence because it was relevant to attack petitioner's credibility.

Although the transcript was not admissible to prove a specific instance of bad character, *N.J.R.E.* 405 and 608, the Rules of Evidence permit evidence that is inadmissible for one purpose to be admitted for another purpose. *N.J.R.E.* 105; *State v. DiRienzo,* 53 *N.J.* 360, 382–84, 251 *A.*2d 99 (1969); *Delgaudio v. Rodriguera,* 280 *N.J.Super.* 135, 142–43, 654 *A.*2d 1007 (App.Div.1995). Indeed, the Appellate Division in the present case found that "there [was] no error in the use of claimant's prior testimony in 1986 to test her present complaints to parts of her body injured in 1989, as well as her physical complaints and limitations of activities related to her accidents." *See also Allendorf v. Kaiserman Enters.,* 266 *N.J.Super.* 662, 674, 630 *A.*2d 402 (App.Div.1993) (finding that in a personal injury action, evidence that plaintiff had prior episodes of passing out was admissible for purposes of impeaching credibility of her testimony that she had no health problems prior to the accident); *Gunter, supra,* 193 *N.J.Super.* at 695, 475 *A.*2d 671 (permitting judge of compensation to allow introduction of additional proofs concerning the effects of an earlier workplace accident to assess compensability of claim); Arthur Larson, *Workmen's Compensation for Occupational Injuries and Death* § 79.71(c) (desk ed.1996) (stating that evidence of prior workers' compensation claims is admissible only where the prior injuries have bearing on whether current injury is the cause of claimant's incapacity).

It is clear from the record that Dupont's counsel did not present the transcript as extrinsic evidence of past acts of untruthfulness. Counsel used the information contained in the transcript to impeach Reinhart's testimony regarding her condition by demonstrating that her complaints overlapped those for which she had received compensation in the 1986 proceedings.

Notwithstanding the fact that the transcript was properly admitted to attack petitioner's credibility, the judge of compensation exceeded the proper scope of its permissible use. He also used the transcript to buttress his conclusion that petitioner had been untruthful on more than one prior occasion and that she had the tendency to be untruthful.

The judge's improper use of the transcript was "overkill." However, where, as here, there is sufficient credible evidence, independent of improper evidence, that supports the findings made by a trial court, the improper use of some evidence does not require a reversal. *Weston v. State*, 60 *N.J.* 36, 51, 286 *A.2d* 43 (1972); Larson, *supra*, § 79.11.

We find substantial credible evidence in the record that supports the finding that petitioner was not credible. The judge of compensation disbelieved Reinhart's claim that there was no foreman to whom she could have reported her injury at the time of the accident. In making that finding, the judge relied on petitioner's cross-examination testimony that there was a foreman on duty on each shift, and that she had on other occasions reported workplace accidents in accordance with Dupont's reporting requirements. He also found Reinhart's testimony that she was harassed by co-workers because of her inability to work inconsistent with her testimony that her job had become significantly easier after the installation of air tables, and that co-workers had been tremendously helpful to her. Reinhart's cross-examination also revealed that she had not complained to her superiors of any problems performing her work or dealing with co-workers after returning to full duty. That testimony also casts doubt on the

validity of her complaints of physical limitations and workplace harassment. Finally, Reinhart's testimony on cross-examination that she recovered from her 1984 injuries after she was paid money and then again began to experience similar symptoms following the 1989 incident, has the capacity to persuade a factfinder that the witness is not credible. Consequently, we find the error to be harmless. *R.* 2:10–2.

The judgment of the Appellate Division is reversed, and the judgment of the Division of Workers' Compensation dismissing the petition is reinstated.

O'HERN, J., dissenting.

In this workers' compensation case, the Appellate Division has correctly concluded that this compensation proceeding was indelibly tainted by an error of law by the compensation judge and has ordered a remand of petitioner's claim. The Court has characterized the error as one of overkill and sustains the dismissal of petitioner's claim for workers' compensation benefits. I disagree.

The appeal concerns a work-connected neck injury in 1989 that has left Ms. Reinhart with a herniated disk that has required a discectomy. During the hearing on this 1989 accident, DuPont introduced evidence of a 1984 work-related injury to petitioner's pelvis. DuPont argued that some of petitioner's present complaints concerning restraint on her activities duplicated complaints from her earlier injuries.

DuPont was successful in persuading the trial court to consider a transcript of the earlier 1986 proceedings and sought to prove that petitioner had a propensity for lying, in part because she had exaggerated her running skills in a 1986 interview given to the Woodbridge Home News, her local newspaper. Ms. Reinhart had met the reporter at her health club and had described to him the beneficial effects of exercise during her recent pregnancy. The reporter was interested in the story and called her for an interview. Based on that telephone interview, he reported that peti-

tioner had "a marathon tucked under her belt." During cross-examination in the 1986 proceedings about how she could run so well despite having suffered the 1984 injury, the petitioner had to admit that she had somewhat embellished on her running skills and that she had not run a complete marathon. She also admitted to other "fibs," such as jogging with her newborn baby, in order to enhance the account of her athletic endeavors.

In its letter brief to the trial court seeking to admit the transcript of the 1986 hearing into evidence on the 1989 accident, DuPont's counsel suggested to the court that *N.J.R.E.* 607 enlarges the ability of parties to introduce evidence affecting the credibility of witnesses, even so far as to allow the use of extrinsic evidence as an acceptable method of showing "a defect of character affecting credibility." What DuPont sought to show was that because Toby Reinhart had exaggerated her prowess as a weekend athlete or jogging mom, she would have been likely to have been untruthful as well in this matter.

The compensation court accepted the reasoning of DuPont, concluding in its opinion:

> [Petitioner] also conceded that she was not truthful with the interview in the Home News entitled, "Pregnancy Doesn't Have to Stop Exercise." She characterizes her falses [sic] as merely "fibs."
>
> The Court concludes that the petitioner has a proclivity to be untruthful, which has a direct bearing on her credibility. These "fibs" caused people to rely upon and take certain actions based on her statements. To her, they may have had no dire consequences; to the Court, it reveals a complete lack of understanding and propensity to be untruthful.

This Court agrees it was error for the judge of compensation to rely on the transcripts concerning the newspaper interview to show a propensity in the claimant to lie.

The error, is not, however, as the Court characterizes it, a matter of "overkill," *ante* at 166, 685 *A.*2d at 1306. Rather, the error displayed a gross misunderstanding of the Rules of Evidence. If every weekend athlete had to account in civil trials for exaggerated accounts of his or her accomplishments, trials would become a bit longer in New Jersey. The stereotypical reasoning

left standing by the Court would provide material for a satire on the legal process if the compensation judge's error were not of such grave consequences to the injured worker. The Appellate Division correctly concluded that although there was no error in the use of claimant's 1986 testimony to test her present complaints to the parts of her body injured in 1989, as well as other residual complaints related to her accidents,

> [e]vidence of [a prior untruthfulness] is not admissible to prove the [disposition] of a person ... [for untruthfulness]. While such evidence may be admitted for other limited purposes, it may not be used to prove that because claimant lied in a previous proceeding that she is lying in this proceeding.

The compensation judge did exactly what he is not permitted to do. He accepted proof that claimant had lied about her jogging in the newspaper interview as proof that she was lying in the compensation proceeding. We should not regard such error as harmless. The Appellate Division felt that flaw so tainted the court's analysis that it would have ordered a rehearing before a new judge had the judge not already retired. I agree and would order a new hearing.

STEIN, J., joins in this opinion.

*For reversal and reinstatement*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, GARIBALDI and COLEMAN—5.

*For affirmance*—Justices O'HERN and STEIN—2.