**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0204-24

KDN, INC. and NICHOLAS
ANTIPIN, individually,

    Plaintiffs-Appellants,

v.

YOURY ANTIPIN,

    Defendant-Respondent.

_____

> Argued November 19, 2025 – Decided December 10, 2025
>
> Before Judges Mayer, Paganelli and Vanek.
>
> On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3682-21.
>
> Kevin S. Englert argued the cause for appellants (The Englert Law Firm, LLC, attorneys; Kevin S. Englert, on the briefs).
>
> Christian R. Oehm argued the cause for respondent (Lindgren, Lindgren, Oehm & You, LLP, attorneys; Christian R. Oehm, on the brief).

PER CURIAM

Plaintiffs Nicholas Antipin (Nicholas)[1] and KDN, Inc. (KDN) (collectively, plaintiffs) appeal from the following: a June 7, 2023 order granting a motion by defendant Youry Antipin (Youry) to reopen discovery; a July 7, 2023 order denying plaintiffs' motion for reconsideration of the June 7 order; a July 9, 2024 judgment entered in favor of Youry establishing the fair market value of a summer rental property in Belmar, New Jersey (Property); and a September 10, 2024 amended judgment. We affirm all orders on appeal.

We summarize the facts from the motion record and the bench trial. Nicholas is KDN's chief executive officer and Youry's brother. In 1999, Nicholas and Youry formed a partnership, KDN, for the purpose of owning and renting the Property. Youry held a thirty-five percent interest in KDN. Nicholas held the remaining interest in the partnership. KDN's partnership agreement required the partner seeking to sell his interest to offer the shares to the other partner at "fair market value."

Over time, the parties' relationship deteriorated. In 2020, Youry told Nicholas he wished to sell his partnership interest to KDN. KDN made three offers to buy Youry's share. However, Youry declined each offer. A year later,

---

[1] Because the parties share the same last name, we refer to them by their first names. No disrespect is intended.

A-0204-24

plaintiffs sued to dissolve the partnership and to compel Youry to sell his partnership interest at fair market value.

The pretrial judge set a discovery end date of March 5, 2023, and a trial date of June 12, 2023. About a month before trial, the parties exchanged witness lists. Plaintiffs listed two expert real estate appraisers: Joseph Fisher and Robert Gagliano. Youry listed one expert real estate appraiser: Todd G. LiPira.

On May 4, 2023, Youry's then-attorney filed a motion to reopen discovery and adjourn the trial. The attorney certified that Youry filed an ethics complaint against LiPira. Consequently, LiPira refused to testify at trial on Youry's behalf. Youry's attorney sought an adjournment of the trial so his client could obtain a new real estate appraiser.

On May 22, 2023, Assignment Judge Lisa P. Thornton heard argument on Youry's motion. The judge engaged in an extensive colloquy with the parties regarding the need to adjourn the scheduled trial so Youry could obtain a new appraisal expert. At oral argument, Youry explained he filed an ethics complaint because LiPira refused to answer questions about his appraisal calculations. Although the judge acknowledged Youry's predicament was self-inflicted, she granted the motion to reopen discovery. To level the playing field, Judge

A-0204-24

Thornton ordered Youry to reimburse plaintiffs for expenses associated with the retention of a new real estate appraisal expert if plaintiffs so elected.

Unfortunately, Judge Thornton died four days later without having entered the order granting Youry's motion. On June 3, 2023, the Presiding Judge of the Civil Division in Monmouth County signed an order reopening discovery and adjourning the trial.

Two weeks later, plaintiffs moved for reconsideration of the June 3 order. They claimed discovery should not have been reopened because Youry filed an ethics complaint against his own appraiser to delay the litigation. They further stated Youry failed to disclose to the court that he also filed an ethics complaint against some of plaintiffs' real estate appraisers.

The pretrial judge heard oral argument on plaintiffs' reconsideration motion. In denying the motion, the judge found Judge Thornton did not abuse her discretion. The judge explained that preventing Youry from retaining a new real estate appraiser to testify at trial would disadvantage Youry and cause him to suffer prejudice. To limit any potential prejudice to plaintiffs, the judge noted Judge Thornton ordered Youry to compensate plaintiffs if they sought an updated real estate appraisal. The judge concluded Judge Thornton properly exercised her discretion and struck a fair balance between the parties' interests.

A-0204-24

In June 2024, Judge Andrea I. Marshall conducted a two-day bench trial to determine the value of the Property for the buyout of Youry's interest in KDN. The trial judge heard testimony from plaintiffs' witnesses: Nicholas, LiPira, and Christopher Otteau, an expert real estate appraiser. Youry called Theodore Lamicella as his expert real estate appraiser. Youry also testified on his own behalf.

LiPira, who was Youry's original real estate appraisal expert, valued the Property at $1,465,000 as of 2023 using both the sales comparison and the income approaches. LiPira also relied on plaintiffs' estimates for the cost of necessary repairs. Applying only the income approach, LiPira valued the Property at $1,180,000.

Otteau valued the Property at $1,400,000 as of 2023. He calculated the value of the Property based on its highest and best use as a rental property. Otteau calculated the value based on the square footage of each unit. Further, he considered the Property's income-generating potential limited to the summer season due to the Property's location in a beach area.

In his direct testimony, Otteau, unprompted by plaintiffs' counsel, criticized Lamicella's expert report. According to Otteau, Lamicella mistakenly valued the Property on a per unit basis and assumed the Property would generate

A-0204-24

twelve months of rental income, which Otteau explained was "physically impossible."

Otteau initially valued the Property at $1,920,000 but deducted $469,000 for necessary repairs. On cross-examination, Otteau conceded his cost estimates for repairs came from plaintiffs and he did not verify the information.

During Lamicella's testimony, he disagreed with Otteau's valuation of the Property. He agreed the highest and best use of the Property was as a rental property. He assessed the value of the Property on a per unit basis. He also calculated rental income on an annual, rather than a seasonal, basis. Further, Lamicella deducted $143,000 for needed repairs.

Using the sales comparison approach, Lamicella valued the Property at $2,500,000 in 2022 and 2023. Using the income approach, he valued the Property at $2,890,000 as of 2022 and $3,033,000 as of 2023. Lamicella reconciled the two approaches for valuation of the Property at $2,700,000 as of 2022 and $2,500,000 as of 2023.

Because Otteau criticized Youry's real estate appraiser's valuation during his direct testimony, his attorney questioned Lamicella about Otteau's report. Plaintiffs' attorney objected, arguing Lamicella did not provide a written rebuttal report during discovery.

6

Judge Marshall overruled the objection, finding Otteau opened the door for Lamicella's direct testimony. Because the case proceeded as a bench trial, the judge explained the information would be helpful to her given the discrepancy in the experts' valuations and methodologies. Additionally, the judge allowed plaintiffs to "bring back [Otteau] on rebuttal" to respond to Lamicella's testimony.

Based on the trial testimony and evidence, Judge Marshall valued the Property at $1,900,933 as of 2023. The judge found all three real estate appraisal experts credible. However, the judge found "both plaintiffs' and defendant's experts made incorrect determinations when calculating fair market value utilizing the income approach." She determined Otteau's use of "square footage . . . [wa]s not the appropriate or preferred criteria" for calculating fair market value under the income approach because "[t]he evidence supports that apartments rent and sell based upon the type of unit . . . as opposed to square footage."

Moreover, while Lamicella "correctly utilized the per unit criteria," the judge explained his "use of annual as opposed to summer rental information to calculate fair market value was not the appropriate measure, given the type of units, historical nature of . . . the renters and rentals for the subject [P]roperty,

7

the specific characteristics of the [P]roperty, . . . and the nature of rentals in Belmar generally."

Further, the judge concluded "the actual rental/income information provided by plaintiff[s wa]s insufficient to utilize when calculating the fair market value of the [P]roperty, as the [c]ourt f[ound] plaintiff[s] ha[ve] not utilized the [P]roperty to its potential." Without actual rental information, the judge applied comparable seasonal rentals provided by Youry's expert to determine the Property's rental income.

Based on her calculation of the Property's fair market value, the judge concluded Youry's shares in KDN were worth $648,102 and entered judgment in that amount. About a month later, the judge amended the judgment to award an additional $4,000 to plaintiffs for the cost of their new expert report.

On appeal, plaintiffs argue Judge Thornton abused her discretion in reopening discovery and adjourning the trial. Further, they contend Judge Marshall abused her discretion by allowing Lamicella, during his direct testimony, to rebut Otteau's report absent the submission of a written rebuttal report. We reject these arguments.

We first address plaintiffs' argument that Judge Thornton abused her discretion in reopening discovery. "[A]ppellate courts . . . defer to a trial judge's

8

discovery rulings absent an abuse of discretion or a judge's misunderstanding or misapplication of the law." Cap. Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017) (citing Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)).

Plaintiffs argue Judge Thornton erred in reopening discovery because she failed to state her reasons on the record or read plaintiffs' briefs in opposition to the motion to reopen discovery. They further assert Judge Thornton mistakenly extended discovery absent a finding of exceptional circumstances.[2]

"Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990). "In the absence of reasons, we are left to conjecture as to what the judge may have had in mind." Ibid.

Contrary to plaintiffs' argument, Judge Thornton detailed her reasons for reopening discovery on the record during an extensive colloquy with counsel. Additionally, Youry was sworn on the motion return date and the judge questioned him regarding his reasons for filing an ethics complaint against his expert.

---

[2] Plaintiffs failed to brief the denial of their motion for reconsideration. "An issue not briefed on appeal is deemed waived." Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011).

After hearing from counsel and Youry, the judge acknowledged Youry's predicament was "self-inflicted." However, she found depriving Youry of an expert would be too drastic because the Property's fair market value was the central issue to be resolved at trial. To level the playing field after reopening discovery, Judge Thornton required Youry "pay any additional expert fees of the plaintiff[s] and the cost of the motion."

Having reviewed the record, Judge Thornton's colloquy with counsel on the record on May 22, 2023 fully articulated the reasons for reopening discovery. Our review of Judge Thornton's decision is not impacted by the entry of the order from a different judge a few days after Judge Thornton's unexpected death.

Plaintiffs also claim Judge Thornton failed to consider their motion papers in opposition to the motion to reopen discovery. From our review of the transcript of the motion argument, plaintiffs vigorously argued why discovery should not be reopened. Plaintiffs failed to identify any of their arguments that Judge Thornton failed to consider.

We also reject plaintiffs' argument that Judge Thornton abused her discretion because there were no exceptional circumstances warranting the reopening of discovery. "No extension of the discovery period may be permitted after an arbitration or trial date is fixed, unless exceptional circumstances are

10

shown." R. 4:24-1(c). To prove exceptional circumstances warranting an extension of discovery after assignment of a trial date, a party must show:

> (1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's failure to request an extension of the time for discovery within the original time period; and (4) the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time.
>
> [Hollywood Café Diner, Inc. v. Jaffee, 473 N.J. Super. 210, 217 (App. Div. 2022) (emphasis omitted) (quoting Rivers v. LSC P'ship, 378 N.J. Super. 68, 79 (App. Div. 2005)).]

"A precise explanation that details the cause of delay and what actions were taken during the elapsed time is a necessary part of proving . . . exceptional circumstances as required by Rule 4:24-1(c) to extend discovery after a trial or arbitration date is set." Bender v. Adelson, 187 N.J. 411, 429 (2006).

Here, Judge Thornton found testimony proffered by real estate appraisal experts was essential to determining the Property's fair market value. Youry initially retained LiPira as his real estate expert. However, issues between Youry and LiPira arose after the close of discovery.

Based on Judge Thornton's examination of Youry during argument on the motion to reopen discovery, it was evident that the circumstances leading to the

11

deterioration of the relationship were beyond Youry's control. Youry told the judge he filed an ethics complaint against LiPira due to a breakdown in communications because LiPira refused to answer Youry's questions about the appraisal. As a result, Youry became concerned regarding LiPira's ability to testify credibly at trial.

Having reviewed the record, Judge Thornton did not abuse her discretion in reopening discovery based on exceptional circumstances. The judge balanced the equities and leveled the playing field by requiring Youry pay plaintiffs' costs associated with obtaining a new expert real estate appraisal report as a result of reopening discovery. Plaintiffs also called LiPira as one of their witnesses at trial, allowing LiPira to testify in support of his valuation of the Property. Under the circumstances, Judge Thornton did not abuse her discretion in reopening discovery.

We next consider plaintiffs' argument that Judge Marshall abused her discretion in allowing Lamicella to testify in response to Otteau's report without submitting a written rebuttal report. We review "a trial judge's evidentiary rulings with substantial deference and will not overturn such a ruling unless it constituted a clear abuse of discretion." Hrymoc v. Ethicon, Inc., 254 N.J. 446, 463 (2023). Abuse of discretion "arises when a decision is 'made without a

rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

"A trial judge is responsible for the control and management of the trial and is vested with wide discretion to perform this function." Horne v. Edwards, 477 N.J. Super. 302, 324 (App. Div. 2023) (quoting State v. T.E., 342 N.J. Super. 14, 29 (App. Div. 2001)). "[T]he decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010) (citing Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)). A "trial court has a wide range of discretion regarding the admissibility of proffered rebuttal evidence." Weiss v. Goldfarb, 295 N.J. Super. 212, 225 (App. Div. 1996). A trial judge also "has the discretion to preclude expert testimony on a subject not covered in the written reports furnished in discovery." Ratner v. Gen. Motors Corp., 241 N.J. Super. 197, 202 (App. Div. 1990). The factors "strongly urg[ing]" a judge to not exclude such

13

testimony are: "(1) the absence of a design to mislead, (2) [the] absence of the element of surprise if the evidence is admitted, and (3) [the] absence of prejudice which would result from the admission of the evidence." Westphal v. Guarino, 163 N.J. Super. 139, 146 (App. Div. 1978) (citing Brown v. Mortimer, 100 N.J. Super. 395, 401-02 (App. Div. 1968)).

Judge Marshall did not abuse her discretion by allowing Lamicella to testify on direct examination regarding Otteau's report. Based on the experts' conflicting valuations of the Property and differing methodologies in arriving at their valuations, Lamicella's testimony aided Judge Marshall in determining the Property's value. Moreover, Youry's attorney did not engage in unfair tactics by questioning Lamicella about Otteau's conclusions. Instead, Otteau opened the door for Lamicella's rebuttal testimony because Otteau, without being prompted by plaintiffs' attorney, criticized Lamicella's report. To the extent plaintiff's counsel was surprised by Lamicella's testimony, Judge Marshall allowed plaintiffs to "bring back [Otteau] on rebuttal." However, plaintiffs did not do so.

We are satisfied there was no prejudice to plaintiffs resulting from the judge's admission of Lamicella's rebuttal testimony. Because this was a bench trial, "we give deference to the trial court that heard the witnesses, sifted the

14

competing evidence, and made reasoned conclusions." <u>Griepenburg v. Twp. of Ocean</u>, 220 N.J. 239, 254 (2015). "[W]e presume that the fact-finder appreciates the potential weakness of [the] proofs, and takes that into account in weighing the evidence." <u>N.J. Div. of Child Prot. & Permanency v. J.D.</u>, 447 N.J. Super. 337, 349 (App. Div. 2016). Where "there is sufficient credible evidence, independent of improper evidence, that supports the findings made by a trial court, the improper use of some evidence does not require a reversal." <u>Reinhart v. E.I. Dupont De Nemours</u>, 147 N.J. 156, 166 (1996); <u>see also</u> <u>In re Civ. Commitment of J.H.M.</u>, 367 N.J. Super. 599, 613 (App. Div. 2003) (holding the "absence of a jury significantly reduces the risk" erroneously admitted evidence will produce an unjust result).

Judge Marshall painstakingly considered and evaluated the experts' reports. She found methodological flaws in each of those reports. Judge Marshall rendered detailed reasons in support of her determining the Property's fair market value based on the record as a whole. Nothing in the record demonstrates Lamicella's rebuttal testimony caused an unjust result. Thus, Judge Marshall did not abuse her discretion in allowing the testimony.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0204-24