224 N.J. Super. 737 (1988)
541 A.2d 298
IN THE MATTER OF THE TENURE HEARING OF M. WILLIAM COWAN, SCHOOL DISTRICT OF THE BOROUGH OF BERNARDSVILLE.
Superior Court of New Jersey, Appellate Division.
Argued March 23, 1988.
Decided May 17, 1988.
*740 Before Judges BRODY and LONG.
Stephen E. Klausner argued the cause for appellant M. William Cowan (Klausner, Hunter & Oxfeld, attorneys; Stephen E. Klausner, of counsel and on the brief).
Lawrence S. Schwartz argued the cause for respondent Board of Education of the Borough of Bernardsville (Schwartz, Pisano, Simon & Edelstein, attorneys; Lawrence S. Schwartz and Nicholas Celso III, of counsel and on the brief).
W. Cary Edwards, Attorney General, attorney for respondent New Jersey State Board of Education (Arlene Goldfus Lutz, Deputy Attorney General, on the statement in lieu of brief).
The opinion of the court was delivered by BRODY, J.A.D.
Affirming the decision of the Commissioner of Education, the State Board of Education dismissed appellant, a tenured public high school music teacher employed by the Borough of Bernardsville School District, for "unbecoming conduct." N.J.S.A. 18A:6-10. Affirming the initial decision of an Administrative Law Judge, the Commissioner found that over the past ten years appellant had committed various acts of verbal and physical abuse of his students. The local board certified eleven charges of misconduct alleged to have occurred during the years 1974, 1975, 1980, 1982 and 1984; the Commissioner found that five of the charges were proved with a residuum of legal and competent evidence.
In this opinion we affirm the dismissal and approve the procedures used by the local board in processing the charges before sending them to the Commissioner for a hearing. We *741 also discuss the application of the residuum rule in disciplinary proceedings where the employee is charged with several acts of misconduct, and comment upon the substantial deficiencies in appellant's brief and appendix.
It appears from this voluminous record that appellant is an experienced, capable and generally well-liked teacher. Unfortunately, he has an uncontrollable temper that over the past ten years has led him to abuse his students verbally and physically. The local board was patient and supportive before becoming punitive. The school administration dealt with each incident by promptly confronting appellant with the allegations of misconduct, giving him an opportunity to explain, reprimanding him, denying him salary increments, affording him psychological counseling and finally, when all else had failed, forwarding to the Commissioner the charges that resulted in his dismissal.

I.
The local board withdrew one of four charges of misconduct alleged to have occurred in 1974. The Commissioner found that there was insufficient evidence to sustain two of the remaining charges but sustained the fourth, the charge that is the subject of our later discussion of the residuum rule. We note that three of the 1974 incidents had prompted the local board to withhold appellant's salary and adjustment increment for the 1975-76 school year. He did not appeal that sanction. The Commissioner dismissed charges of misconduct occurring in 1975 and 1982 for lack of a residuum of competent evidence. He sustained charges of misconduct occurring in 1975 and 1980, and sustained two separate charges of misconduct occurring in 1982. The final charge alleged that appellant had committed a fraud in 1984 that was unrelated to the misconduct alleged in the other charges. The Commissioner dismissed that charge for lack of evidence.
We reject appellant's contention that the earlier charges are too stale to be the basis for a finding of unbecoming *742 conduct. Appellant was informed contemporaneously of each instance of alleged misconduct. The local board's responses were measured, supportive, continuing and patient, until it finally realized that appellant's temper is uncontrollable. He could not have been surprised by the charges, nor could he have mistaken the local board's forbearance as acquiescence. Cf. West New York v. Bock, 38 N.J. 500, 522-523 (1962).
We are satisfied from a careful review of this extensive record that credible evidence supports the dismissal and that, except for those issues hereafter discussed, the issues raised are clearly without merit. R. 2:11-3(e)(1)(D) and (E).

II.
Appellant contends that in several respects the local board failed to follow the procedures prescribed by N.J.S.A. 18A:6-11 and N.J.S.A. 18A:6-13 for processing disciplinary charges against tenured public school employees. N.J.S.A. 18A:6-11 provides in relevant part:
Any charges made against any employee of a board of education under tenure during good behavior and efficiency shall be filed with the secretary of the board in writing, and a written statement of evidence under oath to support such charge shall be presented to the board. The board of education shall forthwith provide such employee with a copy of the charge, a copy of the statement of the evidence and an opportunity to submit a written statement of position and a written statement of evidence under oath with respect thereto. After consideration of the charge, statement of position and statements of evidence presented to it, the board shall determine by majority vote of its full membership whether there is probable cause to credit the evidence in support of the charge and whether such charge, if credited, is sufficient to warrant a dismissal or reduction of salary.... In the event the board finds that such probable cause exists and that the charge, if credited, is sufficient to warrant a dismissal or reduction of salary, then it shall forward such written charge to the commissioner for a hearing pursuant to N.J.S. 18A:6-16, together with a certificate of such determination....
N.J.S.A. 18A:6-13 provides in relevant part:
If the board does not make such a determination within 45 days after receipt of the written charge .. . the charge shall be deemed to be dismissed and no further proceeding or action shall be taken thereon.
*743 The secretary of the local board received the written charges on July 17, 1984, and served a copy of them upon appellant the next day, together with a letter advising him that he had "the right to file a responding written statement of position and a written statement of evidence under oath with the Board within fifteen (15) days of receipt of this letter." The board did not determine probable cause to dismiss until September 14, 1984. Read literally, N.J.S.A. 18A:6-13 had already deemed the charges dismissed on August 31, 1984, 45 days after the board secretary had received them.
The Commissioner and the State Board do not read the statute literally, however, in view of the Legislature's failure to adjust the 45-day limitation period to accommodate a 1975 amendment to N.J.S.A. 18A:6-11 that for the first time required the board to give an employee against whom charges have been filed an opportunity to respond before it considers whether there is probable cause to dismiss him or reduce his salary. L. 1975, c. 304, § 1.
Soon after adoption of the amendment, the Commissioner held that a local board secretary must serve a copy of the filed charges upon the employee within three days, and give him 15 days to file his statement of position and his statement of evidence in opposition. In the Matter of the Tenure Hearing of Marilyn Feitel, 1977 S.L.D. 451, aff'd by State Board of Education, 1977 S.L.D. 458. He harmonized the two statutes by tolling the 45-day statutory period within which the board must act:
The Commissioner holds with respect to N.J.S.A. 18A:16-11, as amended, that the board may not properly consider a filed charge and the evidence in support thereof until the fifteen day period for the affected employee to file a statement has elapsed. Consequently, the forty-five day period provided the board in N.J.S.A. 18A:6-13 to determine whether to certify to the Commissioner begins to toll [sic] when the employee files his statement or when the allotted time for the employee to file the statement expires. [1977 S.L.D. at 455-456.]
*744 Before adopting the Feitel timelines by regulation in 1986,[1] the State Board temporarily departed from the 15-day limitation on the time given an employee to file his statement. In the Matter of Tenure Hearing of Joseph Murphy, 1980 S.L.D. 1519. The Board decided in that case that there need be no uniform time limitation on the employee because "[t]he Legislature evidently left it to the local board to determine what would be a reasonable time for the employee to respond under the particular circumstances." 1980 S.L.D. at 1520. It concluded that after a local board had given the employee as much time to file a responding statement as he wanted, the time expired when the employee's attorney advised the board, more than two months later, that he would not file a statement.
Applying the State Board's policy here, by tolling the statutory 45-day period for the day it took to serve appellant and for the 15 days thereafter that the board gave him to file his statement in response, the board had until September 16, 1984, to determine probable cause unless appellant started the 45-day period running sooner by filing his statement earlier. Appellant *745 did not file a statement at all; thus the board acted within time when it found probable cause on September 14.
Appellant contends that the 45-day period began to run on July 30, 1984, the day the local board's attorney received his attorney's letter stating that he would not file a statement in response to the charges. Measured from that date, the Board's 45-day period expired September 13, the day before it found probable cause. Appellant bases his argument upon the statement in Murphy that the board's 45-day period started when the employee's attorney advised the board that the employee would not file a statement. 1980 S.L.D. at 1520.
The Commissioner decided that the letter from appellant's attorney was not a statutory statement and therefore the board could properly refrain from considering the charges until appellant's 15-day period had expired. The decision is not contrary to the State Board's decision in Murphy. There the local board had allowed the employee to take as much time as he wanted to file his statement. Therefore, his attorney's advice that the employee would file no statement established the end of the period that the board had given him.
We must defer to the State Board's interpretation of a legislative scheme that it administers unless its interpretation is arbitrary and unreasonable or violates legislative policies expressed or fairly implied. Dore v. Bedminster Tp. Bd. of Ed., 185 N.J. Super. 447, 453 (App.Div. 1982). We conclude that the State Board acted reasonably and within the legislative scheme when it harmonized N.J.S.A. 18A:6-11 and N.J.S.A. 18A:6-13 as it did. Tolling the 45-day period within which a local board must determine whether there is probable cause to dismiss a tenured employee until the employee has had time to exercise his statutory right to respond to the charges, preserves the board's statutory 45 days to consider the matter. The Board also acted reasonably in allowing local boards to permit employees, often unsettled by their situation, to change their minds by giving them a full 15 days to file responding papers, even if *746 before then an employee or his attorney advises that he will not respond.
Appellant next finds fault with the statement accompanying the charges filed with the board secretary. N.J.S.A. 18A:6-11 requires that the charge be accompanied by "a written statement of evidence under oath to support such charge...." There were two sworn statements, one by the high school principal and the other by the vice principal. The vice principal's statement recites facts regarding one of the incidents of misconduct; the principal's statement recites facts regarding the others. Neither affiant witnessed the events described, but each statement recites what named people having personal knowledge of the facts reported to the affiant. Appellant contends that the statute requires that the affiant have personal knowledge of the facts recited in the statement. We disagree.
The statute requires that the local board determine whether there is probable cause based upon the presentation of "a written statement of evidence under oath...." N.J.S.A. 18A:6-11. That evidence may be hearsay. The local board acts like a grand jury in a criminal matter. Just as a grand jury must find probable cause before a matter may proceed to trial, a local board must find probable cause before the matter may proceed to a hearing before the Commissioner. N.J.S.A. 18A:6-11 and N.J.S.A. 18A:6-16. A grand jury may return an indictment based wholly on hearsay statements recounted or presented by a witness under oath, so long as the declarants of the statements had personal knowledge of the facts stated. State v. Vasky, 218 N.J. Super. 487, 491-492 (App.Div. 1987). The statute does not require more in these proceedings. Here, the principal and vice principal recounted under oath the facts that named people with personal knowledge had reported to them. Their statements, though hearsay, satisfied the requirements of the statute.
*747 Appellant's final attack on the local board's procedures relates to the form of its certification. N.J.S.A. 18A:6-11 provides that upon determining that there is probable cause to credit a written charge, the local board "shall forward such written charge to the commissioner for a hearing ... together with a certificate of such determination." The certification here was by the board secretary. It is entitled "Certification," but it is in the usual form of an affidavit, including a jurat signed by the then local board attorney. The basic fact certified is that the board "determined that the charges and the evidence in support of the charges were sufficient, if true in fact, to warrant dismissal or a reduction in salary." Appellant acknowledges that the facts recited in the certification are true. However, he contends that the certification is defective and therefore all the proceedings conducted thereafter were invalid because the jurat was dated and signed by the board attorney four days before the board secretary signed the certification.
We strongly condemn the practice of signing a jurat out of the presence of the person purporting to be making the oath. The practice is dangerous to the participants and altogether reprehensible. See In re Education Association of Passaic, Inc., 117 N.J. Super. 255, 266-267 (App.Div. 1971), certif. den. 60 N.J. 198 (1972). Nevertheless, it does not follow that a document suffering from that infirmity necessarily loses its character as the legal equivalent of a sworn statement. We are satisfied that the document at issue is a certification, and therefore we need not decide how the proceedings would have been affected, if at all, were it not.
The statute requires a certification to assure the Commissioner that the board has found probable cause. That assurance is provided because a person making a certification is aware that he faces criminal penalties if his certification is false. For purposes of criminal prosecution an oath, an affirmance and a certification are treated the same. State v. Angelo's Motor Sales, 125 N.J. Super. 200, 207 (App.Div. 1973), aff'd sub nom *748 State v. Parmigiani, 65 N.J. 154 (1974) ("Certification is only another way of swearing or affirming."). See also State v. Kushner, 192 N.J. Super. 583 (App.Div. 1984). The form of certification need only be a "perceptible manifestation of the intent to verify the statement certified." State v. Angelo's Motor Sales, 125 N.J. Super. at 207.
When the board secretary signed the document at issue it already contained a completed jurat next to the place where he affixed his signature. The jurat, in usual form, recited that the secretary had sworn that his statement was true. By placing his signature next to the jurat, the board secretary made a perceptible manifestation of his intent to verify his statement. In these circumstances, he was aware that his statement was at least equivalent to a sworn statement that exposed him to criminal prosecution if it was false. The statement is a certification.

III.
The last issue that we will discuss requires us to consider the application of the residuum rule in disciplinary proceedings brought against tenured employees for unbecoming conduct where the employee is charged with several acts of misconduct. The issue arises because the Commissioner based his determination of unbecoming conduct in part on an incident of alleged assault that occurred in 1974. Evidence of the incident consists of the testimony of the high school principal, his contemporaneous memorandum that he had sent to appellant recounting facts learned from alleged eyewitnesses, and appellant's memorandum in response.
The principal did not witness the incident. He testified, however, that he had learned of it from the student whom appellant allegedly assaulted and from an administrative assistant.
The principal's memorandum to appellant contains the following account of the incident:

*749 During the 7th and 8th grade band rehearsal, [the student (naming him)] hit [a student who was appellant's son] over the head with an object. Mr. Cowan brought [the assaultive student] to [the administrative assistant's] office. He was physically taking [the student] to the office where, at one time [the student's] feet were not even on the ground. The student was suspended by [the administrative assistant].
As Mr. Cowan was leaving and going down the stairs to the band room, Mr. Cowan was observed and heard to hit his fist against the wall and say "that fucking kid I'll kill him."
Appellant responded to the accusation in a memorandum as follows:
[The student] hit my son ... on the head with a metal stool causing personal injury. I took him to the office and his feet were on the ground at all times. On returning, I spoke privately to the principal who was standing in the corridor at the time. I also did not strike the cement wall as it would have broken my hand.
Elsewhere in his memorandum the principal repeated the recital of violent profanity that appellant is accused of having used on this occasion. Appellant stated in his reply memorandum to that specific recital, "[t]he emotional reaction occurring with this student is the direct result of a father over-reacting to personal injury to his son."
Appellant contends that all the evidence against him regarding the alleged assault is inadmissible hearsay. We agree. The Commissioner considered appellant's responding memorandum to be an admission of the assault:
It is clear that respondent does not deny that he used physical force upon [the student] but, rather, denies that [the student's] feet left the floor while respondent transported him to the office. Further, respondent admits that he overreacted in this situation, which leads the Commissioner to the conclusion that respondent's behavior in the given situation was inappropriate and unseemly for a teaching staff member.
Appellant admitted to overreacting only in using the language attributed to him in the principal's memorandum. Appellant stated that the student's "feet were on the ground at all times" in response to the principal's statement that appellant "was physically taking [the student] to the office where, at one time [the student's] feet were not even on the ground." Thus appellant denied the only accusation of assault in the principal's memorandum.
*750 We nevertheless conclude that application of the residuum rule does not require that hearsay evidence of the assault be ignored. The residuum rule was enunciated in Weston v. State, 60 N.J. 36 (1972):
It is common practice for administrative agencies to receive hearsay evidence at their hearings.... However, in our State ... a fact finding or a legal determination cannot be based upon hearsay alone. Hearsay may be employed to corroborate competent proof, or competent proof may be supported or given added probative force by hearsay testimony. But in the final analysis for a court to sustain an administrative decision, which affects the substantial rights of a party, there must be a residuum of legal and competent evidence in the record to support it.
It is not possible to state a hard and fast rule as to the extent hearsay may be utilized in evaluating the sufficiency of the evidentiary basis of a particular administrative determination. Suffice it to say that much may be left to the discretion of the administrative official who should be aware of the principle which warrants reception of hearsay, as well as the qualification thereon that the decision should not be predicated on hearsay alone. On judicial review, in deciding whether the evidence in its totality sustained the administrative conclusion, naturally the same rule of admissibility would apply. Of course more sensitive awareness would be expected of a court weighing the combined probative force of the relevant hearsay and the relevant competent evidence. [Weston, 60 N.J. at 50-52; citations omitted.]
The rule is codified in N.J.A.C. 1:1-15.5(b) as follows:
Notwithstanding the admissibility of hearsay evidence, some legally competent evidence must exist to support each ultimate finding of fact to an extent sufficient to provide assurances of reliability and to avoid the fact or appearance of arbitrariness.
Applying the residuum rule requires identifying the "ultimate finding of fact" that must be supported by a residuum of competent evidence. Here the "ultimate finding of fact" was that during the years 1974, 1975, 1980, 1982 and 1984 appellant engaged in one or more of eleven acts of alleged misconduct that were "unbecoming." Alternatively, one might characterize as the "ultimate finding of fact" that appellant was engaged in a course of unbecoming conduct of which the acts charged were examples.[2] Whether each of the acts *751 charged is viewed as unbecoming conduct, as corroborative evidence that one or more of the other acts charged were unbecoming conduct, or only as examples of a course of unbecoming conduct, there need not be a residuum of competent evidence to prove each act considered by the Commissioner so long as "the combined probative force of the relevant hearsay and the relevant competent evidence" sustains the Commissioner's ultimate finding of unbecoming conduct. Weston, 60 N.J. at 52.

IV.
Occasionally we must take the time to remark on the format of a brief that blatantly violates the Rules of Court. This is such an occasion. The initial briefs of parties may not exceed 65 pages if, as here, the briefs are typed. R. 2:6-7. Where the appendix to a brief is lengthy it may be bound separately, but no appendix volume may exceed 200 sheets. The limitation on the number of pages in a brief is a limitation on content; the limitation on the number of sheets in an appendix volume is a limitation on bulk.
Appellant's attorney sought this court's permission to file an overlength brief. We denied the request. In reporting to appellant's attorney the disposition of his motion, an employee in our clerk's office confused the limitation on the number of pages in a brief with the limitation on the number of sheets in an appendix volume and advised appellant's attorney that his brief would comply with the rule if it did not exceed 65 sheets. Appellant filed a 130-page brief reproduced on both sides of 65 sheets.[3]
*752 Our clerk's office spares us untold burdens by spotting deficiencies in papers submitted for filing and returning them to attorneys and pro se litigants for correction. Attorneys may properly rely on the advice received from the clerk's office regarding matters of practice that are not expressly covered by the Rules of Court. But a call to the clerk's office is not a substitute for reading and complying with the Rules. An attorney may not violate an unambiguous Rule of Court with impunity because he relied upon the erroneous advice of a person in the clerk's office.
The limitation on the number of pages in a brief has a wholesome purpose. It requires the brief writer to recount the facts and to argue the law with economy. That constraint is designed to produce a brief that is well-organized, thoughtful, comprehensible and to the point.
The vice of an overlength brief is fully apparent here. R. 2:6-2(a)(4) provides that the statement of facts in a brief "shall not be a summary of all of the evidence adduced at trial, witness by witness." Despite that prohibition, appellant squandered the entire 70 pages of his "Statement of Facts" on an unrelieved recital of selected excerpts from the testimony of witnesses. In most instances the brief writer paraphrases the testimony, but there is one extended stretch of 16 pages that contains nothing but verbatim testimony. All of the material is undigested and offered without comment or context. After reading this "Statement of Facts" the reader remains almost as uninformed as before about the factual background of the issues on appeal.
Appellant's expansiveness infected the legal arguments in his brief with similar unproductive results. Over 20 pages are devoted to single-spaced extensive quotations from published opinions and from the record. At one point two opinions are quoted in three and a half continuous pages without regard to the relevancy of the quoted material.
We also note that the appendix to appellant's brief is in a single volume composed of 310 sheets in violation of the Rule's *753 200-sheet limitation. This ungainly volume, loosely held together with long, protruding, pointed cotter pin fasteners, includes a three-page table of contents listing many of the exhibits presented during the numerous hearings. The list does not refer to exhibit numbers and does not indicate "the pages of the stenographic record at which each exhibit was marked for identification and was offered into evidence" contrary to R. 2:6-1(c). We were thus handicapped when we had to find particular exhibits that were referred to in the transcript and opinions below only by number.
The point of this unpleasant exercise is to warn the bar that similar transgressions risk censure, sanctions and suppression. Morris v. Jersey City, 179 N.J. Super. 460, 464-465 (App.Div. 1981); State v. Hild, 148 N.J. Super. 294, 296 (App. Div. 1977). In an extreme case an appeal will be dismissed. Cherry Hill Dodge, Inc. v. Chrysler Credit Corp., 194 N.J. Super. 282, 283-284 (App.Div. 1984). We would have invoked that sanction here were it not for the transcendent importance of the substantive issues raised in the appeal.
Affirmed.
NOTES
[1] N.J.A.C. 6:24-5.1(b) provides in relevant part:

(b) In all instances of the filing and certification of tenure charges, other than for reasons of inefficiency, the following procedures and timelines shall be observed:
* * * * * * * *
2. Charges along with the required sworn statement of evidence shall be transmitted to the affected tenured employee within three working days of the date they were filed with the secretary of the district board. Proof of mailing or hand delivery shall constitute proof of transmittal.
3. The affected tenured employee shall have an opportunity to submit to the district board of education a written statement of position and a written statement of evidence both of which shall be executed under oath with respect thereto within 15 days of receipt of the tenure charges.
4. Upon receipt of respondent's written statement of evidence under oath, or upon expiration of the allotted 15 day time period, the district board of education shall determine by a majority vote of its full membership within 45 days whether there is probable cause to credit the evidence in support of the charges and whether such charges, if credited, are sufficient to warrant a dismissal or reduction of salary. [Citation omitted.]
[2] In similar circumstances the Commissioner described the charges in Feitel, 1977 S.L.D. at 452, as follows:

The specification of the charges set forth inefficiency as the first major area, supported by thirteen specific examples, and conduct unbecoming a teacher as the second major area, followed by eleven specific examples.
[3] Respondent's attorneys, presumably as a defensive measure, followed suit with a more modest overlength 90-page brief reproduced on both sides of 45 sheets.