775 A.2d 87 (2001)
Richard DeBARTOLOMEIS, Petitioner-Appellant,
v.
BOARD OF REVIEW, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted May 1, 2001.
Decided May 23, 2001.
Richard DeBartolomeis, appellant pro se.
John J. Farmer, Jr., Attorney General, attorney for respondent (Michael J. Haas, *88 Assistant Attorney General, of counsel; Alan C. Stephens, Deputy Attorney General, on the brief).
Before Judges KESTIN, CIANCIA and BILDER.
The opinion of the court was delivered by KESTIN, J.A.D.
Petitioner appeals from a decision of the Board of Review holding him to be disqualified for unemployment compensation benefits. In so ruling, the Board adopted the decision of an appeals examiner who determined petitioner had not made an adequate showing that his October 25, 1999 resignation from his employment was due to a medical condition which disabled him from his work as a maintenance technician for the Sodexho Marriott Corporation. See Israel v. Bally's Park Place, Inc., 283 N.J.Super. 1, 5, 660 A.2d 1259 (App.Div.1995), certif. denied, 143 N.J. 326, 670 A.2d 1067 (1996); see also Wojcik v. Board of Review, 58 N.J. 341, 344, 277 A.2d 529 (1971). We reverse.
The only evidence received in the hearing before the Appeal Tribunal was petitioner's testimony, in which he made an effort to establish the medical basis for his inability to work at the job assigned by the employer. Petitioner testified about his health history, particularly concerning a back injury which had been recognized as a basis for workers' compensation benefits and a medical-surgical leave. When he requested an opportunity to submit medical records in support of his contentions, the appeals examiner replied: "No, just sworn testimony here."
Petitioner has supplied us with the medical records and related documents he contends he attempted to introduce at the hearing before the Appeal Tribunal, but which were rejected. These include four workplace injury reports, apparently copies of employment records. Each is entitled "first report of injury." They memorialize two incidents in June 1995, one in April 1999, and another in May 1999, in which petitioner reported on-the-job back injuries from moving items such as benches, a baby grand piano, shop equipment, and chairs and tables. The first three reports note that treatment was not authorized and none was given for the reported injuries; the treatment item is blank in the fourth form.
The remaining medical records, dating from December 8, 1997 to October 25, 1999, tend to establish that, after unavailing courses of conservative treatment for his back pain, petitioner underwent surgery on January 27, 1999, a lumbar laminotomy, for a herniated disc at L5-S1. Among the documents are three "worker's compensation quick notes" from the Shore Orthopaedic Group. The first, dated July 28, 1999, contains diagnostic and treatment notations we are unable to decipher and a checkmark in the "no work" box. Another, dated September 22, 1999, also specifies "no work." The third, dated October 25, 1999, the day petitioner resigned, contains a checkmark beside "return to work, no restrictions," and a notation "PT AT MAX Med." [sic]
According to petitioner's testimony, the employer's workers' compensation physician eventually evaluated him as capable of returning to work, with a recommendation that petitioner be assigned to "light duty", but there was no light work available for which petitioner was qualified. We note the apparent conflict between petitioner's account and the October 25, 1999 physician's note that petitioner could "return to work, no restrictions." Petitioner also testified that after the physician's final evaluation, he "hurt [his] back again at home, and ... decided, well, the surgery *89 didn't work and the needles didn't work." Petitioner acknowledged that the "company doctor" did not tell him to quit his job, but he testified:
I've had this back problem for years, with the company, I've been on light duty with them and they ignored most of the light duty requirements by the doctor, which just made my back worse. I mean, most of the managers, they knew I had a bad back, I don't think they told each other. And we went through five unit managers and three district managers, I don't think any of them really took the time to investigate what was going on with my situation. I tried to get a different type of job, something that was less physical and demanding .... [w]ithin the company, and they told me nothing was available. I tried to get better when my back started hurting with the physical therapy and the epidurals and the ... injections; I've had at least 13 shots total in the hospital. I think because they ignored the light duty that I was on for those several months, that I didn't get a chance to recuperate, they just didn't ... they were short staffed, I was filling in for people and I was doing things that I wasn't supposed to be doing.
The appeals examiner erred in declining to receive the medical reports and related documents in support of petitioner's contention that he left the job because he was medically unable to do the work assigned to him. Such material, although hearsay evidence, is admissible in proceedings of this type. See, e.g., Borgia v. Board of Review, 21 N.J.Super. 462, 466, 91 A.2d 441 (App.Div.1952); see also Reinhart v. E.I. Dupont de Nemours, 147 N.J. 156, 163-64, 685 A.2d 1301 (1996); Andricsak v. National Fireproofing Corp., 3 N.J. 466, 471, 70 A.2d 750 (1950).
As a matter of law, the Rules of Evidence do not apply to administrative agency proceedings, see N.J.R.E. 101(a)(3), except for the provisions governing privileges, see N.J.R.E. 101(a)(1), and instances "where statutes or other rules governing particular administrative proceedings affirmatively require application of the rules of evidence[.]" Biunno, Current N.J. Rules of Evidence, comment 3 on N.J.R.E. 101(a) at 14 (2001). As explained in the 1991 Supreme Court Committee Comment to Rule 101(a) of the Rules of Evidence:
Paragraph (a)(3) of Rule 101 replaces N.J. Evid. R. 2(3), for which there is no federal analogue. While it changes the language of N.J. Evid. R. 2(3), it merely conforms the rule to established practice. N.J. Evid. R. 2(3) addressed only so-called formal hearings before administrative agencies and tribunals and provided that the rules of evidence were applicable to such hearings except as otherwise provided by statute. Since so-called informal hearings were not addressed, it appears that the 1967 rules of evidence were not intended to apply to those proceedings. The Administrative Procedure Act (APA), N.J.S.A. 52:14B-1, et seq., enacted subsequent to the adoption of N.J. Evid. R. 2(3), replaced the former undefined formal and informal hearing dichotomy by creating the category of contested cases to which a variety of procedural consequences attach. N.J.S.A. 52:14B-2(b). The APA expressly provides that the rules of evidence do not apply to contested cases. N.J.S.A. 52:14B-10(a). This comports with pre-APA case law. See, e.g., In re Plainfield-Union Water Co., 11 N.J. 382, 392, 94 A.2d 673 (1953). The requirement of N.J. Evid. R. 2(3) that the rules of evidence apply to formal hearings unless relaxed by statute was contrary to established case law and was *90 not complied with in practice. Rule 101(a)(3) recognizes current practice and the codification of the common-law principle by the APA by making the rules of evidence inapplicable to all administrative proceedings. However, the law of privileges applies to all proceedings. That had been expressly provided for by N.J. Evid. R. 2(3) and is now repeated in Rule 101(a)(1) as well as in this paragraph.
The risks of relatively free use of hearsay and other forms of evidence not sanctioned by the Rules of Evidence are mitigated by a correlative standard requiring the existence of some legally competent evidence as the foundation of every adjudicative determination made by an administrative agency. See Reinhart, supra, 147 N.J. at 163, 685 A.2d 1301; Andricsak, supra, 3 N.J. at 471, 70 A.2d 750; Gunter v. Fischer Scientific Am., 193 N.J.Super. 688, 691, 475 A.2d 671 (App.Div.1984); Borgia, supra, 21 N.J.Super. at 466, 91 A.2d 441.
This preclusionary principle is sometimes framed as an application of fundamental fairness policies. See, e.g., Bally Mfg. Corp. v. New Jersey Casino Control Comm'n, 85 N.J. 325, 426 A.2d 1000, appeal dismissed, 454 U.S. 804, 102 S.Ct. 77, 70 L.Ed.2d 74 (1981); Costantino v. New Jersey Merit Sys. Bd., 313 N.J.Super. 212, 220-21, 712 A.2d 1158 (App.Div.), certif. denied, 157 N.J. 544, 724 A.2d 803 (1998); Koza v. New Jersey Dep't of Labor, 307 N.J.Super. 439, 450-52, 704 A.2d 1310 (App.Div.1998); Park Tower Apts. Inc. v. Bayonne, 185 N.J.Super. 211, 223, 447 A.2d 1359 (Law Div.1982).
It is also the basis of the residuum rule, enunciated by Justice Francis in Weston v. State, 60 N.J. 36, 286 A.2d 43 (1972):
It is common practice for administrative agencies to receive hearsay evidence at their hearings. * * * However, in our State as well as in many other jurisdictions the rule is that a fact finding or a legal determination cannot be based upon hearsay alone. Hearsay may be employed to corroborate competent proof, or competent proof may be supported or given added probative force by hearsay testimony. But in the final analysis for a court to sustain an administrative decision, which affects the substantial rights of a party, there must be a residuum of legal and competent evidence in the record to support it. * * *
It is not possible to state a hard and fast rule as to the extent hearsay may be utilized in evaluating the sufficiency of the evidentiary basis of a particular administrative determination. Suffice it to say that much may be left to the discretion of the administrative official who should be aware of the principle which warrants reception of hearsay, as well as the qualification thereon that the decision should not be predicated on hearsay alone. On judicial review, in deciding whether the evidence in its totality sustained the administrative conclusion, naturally the same rule of admissibility would apply. Of course more sensitive awareness would be expected of a court weighing the combined probative force of the relevant hearsay and the relevant competent evidence.

[Id. at 50-52, 286 A.2d 43 (citations omitted).]
The residuum rule, along with its corollary regarding the admissibility of hearsay evidence, has been codified in the Uniform Administrative Procedure Rules, promulgated to apply to all administrative agency proceedings, subject to superseding law. See N.J.A.C. 1:1-1.1.
(a) Subject to the judge's discretion to exclude evidence under N.J.A.C. 1:1-15.1(c) or a valid claim of privilege, hearsay evidence shall be admissible in the trial of contested cases. Hearsay evidence *91 which is admitted shall be accorded whatever weight the judge deems appropriate taking into account the nature, character and scope of the evidence, the circumstances of its creation and production, and, generally, its reliability.
(b) Notwithstanding the admissibility of hearsay evidence, some legally competent evidence must exist to support each ultimate finding of fact to an extent sufficient to provide assurances of reliability and to avoid the fact or appearance of arbitrariness.
[N.J.A.C. 1:1-15.5.]
See also In re Cowan, 224 N.J.Super. 737, 750-51, 541 A.2d 298 (App.Div.1988); Department of Law and Pub. Safety v. Merlino, 216 N.J.Super. 579, 585, 524 A.2d 821 (App.Div.1987), aff'd o.b., 109 N.J. 134, 535 A.2d 968 (1988); R.K. v. Department of Human Servs., 215 N.J.Super. 342, 347-48, 521 A.2d 1319 (App.Div.1987). See generally, Pressler, Current N.J. Court Rules, comment 3.3 on R. 2:10-1 (2001); Biunno, Current N.J. Rules of Evidence, comment 3 on N.J.R.E. 101(a) at 15-16 (2001); Steven L. Lefelt, Unobjected to Hearsay and the Residuum Rule in Administrative Hearings, 116 N.J.L.J. 1 (1985); Ernest H. Schopler, Hearsay Evidence in Proceedings Before State Administrative Agencies, 36 A.L.R.3d 12, 47-51 (1971).
A similar formulation has been specifically adopted for application in unemployment compensation proceedings. N.J.A.C. 12:20 App., subch. 1:12-15.1(b).
In our experience, documentary proofs of this kind are typically received in unemployment compensation cases in support of contentions bearing upon a petitioner's medical condition. That is clearly proper. The risks of undue prejudice to the employer or of unreliability are minimal, especially with regard to documents generated by physicians or others functioning on behalf of the employer in the ordinary course of providing their professional services. Safeguards other than exclusion exist for disregarding more unreliable forms of hearsay evidence that are offered as the basis of a finding on disputed facts that go to the heart of a ruling. See, e.g., Koza, supra, 307 N.J.Super. at 451-52, 704 A.2d 1310; see also In re Cowan, supra, 224 N.J.Super. at 750-51, 541 A.2d 298 (addressing the techniques of applying the residuum rule in reaching an ultimate finding based upon "the combined probative force of the relevant hearsay and the relevant competent evidence." (quoting Weston, supra, 60 N.J. at 52, 286 A.2d 43)). In any event, some of the records proffered by petitioner may be legally admissible by reason of an appropriate application of the business records exception to the hearsay rule, see N.J.R.E. 803(c)(6), or on some other ground.
It may be that once all the proofs are analyzed, petitioner will fail in his quest for unemployment compensation. He may be unable to explain apparent inconsistencies in the documentation he submits, or between those documents and the account he offers. He may be unable to make a sufficient showing that he left the employment for adequate, medically established reasons indicating that, in the light of his physical condition, he could not or should not continue to discharge his customary duties, and that the employer could not or would not assign him to other duties. With whatever shortcomings his proffers may embody, petitioner is entitled to a full evaluation of all the proofs available before a ruling is made on the validity of his claim, and we remand for a new hearing toward that end.
We note, also, petitioner's contention that he could not afford to consult with a physician on his own and was, because of *92 his financial limitations, required to depend upon the evaluations and reports of physicians functioning on behalf of the employer. If that circumstance remains unchanged, we are confident the proofs will be evaluated in the appropriate light at the new hearing. Of course, petitioner is entitled to submit further medical proofs of his own.
Reversed and remanded.